## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| D.M., by her mother and next best friend, | ) | |
| CASSONDRA MATTHEWS, | ) | |
| | ) | No. 22 C 2111 |
| Petitioners, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GRANITE CITY COMMUNITY | ) | |
| SCHOOL DISTRICT #9; | ) | |
| STEPHANIE CANN, Superintendent, | ) | |
| | ) | |
| Respondents. | ) | |

## NOTICE OF REMOVAL

NOW COME the Defendants, Granite City School District #9 and Stephanie Cann,

Superintendent, by and through their attorney, Robert E. Swain, Kriha Boucek LLC, and state

the following as their notice of removal of this action to the United States District Court for the

Southern District of Illinois.  In support of this Notice of Removal, the Defendants state as

follows:

1.      This underlying action was filed in the Circuit Court for the Third Judicial Circuit,

Madison County, Illinois, on August 11, 2022, and docketed as No. 22 MR 000187.  Madison

County lies within the Southern District of Illinois.

2.      Grantie City School District #9 and Stephanie Cann, Superintendent, are the only

defendants in the underlying action.  Both defendants join in removing this matter to the U.S.

District Court for the Southern District of Illinois.

3.      The Defendants first received a copy of the underlying complaint on August 12,

2022.  This notice of removal is filed within thirty days of the Defendants first receiving a copy

of the underlying complaint.

4.      The underlying complaint contains three counts alleged against the Defendants.

5.      Count I of the underlying complaint alleges that the Defendants violated the minor plaintiff's procedural due process rights in violation of the Fourteenth Amendment to the United States Constitution and asserts a claim against the Defendants pursuant to 42 U.S.C. § 1983.  The alleged violation of procedural due process occurred during school disciplinary proceedings involving the minor plaintiff.

6.      Count II of the underlying complaint alleges that the Defendants violated the minor plaintiff's substantive due process rights in violation of the Fourteenth Amendment to the United States Constitution and asserts a claim against the Defendants pursuant to 42 U.S.C. § 1983.  The alleged violation of substantive due process arises out of the same school disciplinary proceedings involving the minor plaintiff.

7.      Count III of the underlying complaint asserts a claim for judicial review of the school disciplinary decision involving the minor plaintiff pursuant to the Illinois *Administrative Review Law*.  The prayer for judicial review concerns the same disciplinary proceedings that are the subject of Counts I and II.

8.      This Court has original jurisdiction over Counts I and II of this complaint pursuant to 28 U.S.C. § 1331(a), as Counts I and II arise under the Constitution and laws of the United States.

9.      This Court has supplemental jurisdiction over Count III of this complaint pursuant to 28 U.S.C. § 1367(a), as Count III arises out of the same case or controversy alleged in Counts I and II of the complaint.

10.     This action may be removed to this Court pursuant to 28 U.S.C. § 1441(a).

11.     The summonses, complaint, and motion for temporary restraining order and injunction received by the Defendants in the underlying action are attached hereto as Exhibit A. No other pleadings, process, or orders have been received by the Defendants.

a.      The original documents received by the Defendants included the full names of minor students, including the minor plaintiff.  Pursuant to Local Rule 5.1(d)(2), the Defendants have redacted the names of minors (leaving their initials) throughout Exhibit A.

b.      The motion for temporary restraining order and injunction includes eight exhibits, designated as Exhibits A-F, J, and K.  The Defendants did not receive, and the motion does not cite, any exhibits designated as G, H, or I.  It appears that G, H, and I were unused.

WHEREFORE, the Defendants, Granite City School District #9 and Stephanie Cann, Superintendent, pray that this Court exercise jurisdiction over this action, adjudicate the merits of the same, and grant such other and further relief as the Court deems proper and just.

Respectfully submitted,

GRANITE CITY SCHOOL
DISTRICT #9 and
STEPHANIE CANN,
Superintendent

Date:   September 9, 2022              By:     /s/ Robert E. Swain
                                               One of their attorneys

Robert E. Swain,
 IL ARDC No. 6256749
Kriha Boucek LLC
3 Club Centre Court, Suite D
Edwardsville, Illinois 62025
630.394.3790
rob@krihaboucek.com

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that a true and correct copy of the foregoing NOTICE OF REMOVAL was filed electronically with the Court's CM/ECF filing system, with copies sent by CM/ECF to all attorneys of record, and also sent by electronic and U.S. mail, first class postage prepaid, at or before the hour of 5:00 p.m., September 9, 2022, addressed as follows:

> Morgan Scroggins
> Scroggins Law Office Ltd.
> 1506 Johnson Road, Suite 200
> Granite City, Illinois 62040
> clientsupport@scrogginslawoffice.com

Date:  September 9, 2022          By:     /s/ Robert E. Swain

Robert E. Swain,
 IL ARDC No. 6256749
Kriha Boucek LLC
3 Club Centre Court, Suite D
Edwardsville, Illinois 62025
630.394.3790
rob@krihaboucek.com

# EXHIBIT A

IN THE CIRCUIT COURT
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

D█████ M███████, by )
her mother and next best friend )
CASSONDRA MATTHEWS )
)
)
Petitioner, )
)
vs. )  No. 2022- 2022MR000187
)
GRANITE CITY COMMUNITY )
SCHOOL DISTRICT #9; )
STEPHANIE CANN, Superintendent )
)
Respondent. )

## **SUMMONS**

TO:  GRANITE CITY COMMUNITY SCHOOL DISTRICT #9 via

Shane Jones, Attorney for the Defendant
**Kriha Boucek**
3 Club Centre Ct., Suite D
Edwardsville, IL 62025

You are summoned and required to appear before this Court at the Madison
County Courthouse, 155 N. Main Street, Edwardsville, Illinois, on
_____9/15/2022_____ at the hour of 11:00AM_____ in Courtroom TBA_ to
attend a hearing on the Complaint, a copy of which is hereto attached. IF YOU FAIL TO
DO SO, A JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE
RELIEF ASKED IN THE COMPLAINT.

TO THE OFFICER:

This Summons must be returned by the officer or other person to whom it was
given for service, with indorsement thereon of service and fees if any, immediately after
service.  If service cannot be made, this Summons shall be returned so indorsed.

This Summons may not be served later than 30 days after its date.



WITNESS,_____8/12/2022_____,20____

/s/ Thomas McRae
_____
Clerk of the Court

BY DEPUTY:____/s/ Stacey Turner_____

DATE OF SERVICE:_____,20____
(To be inserted by officer on copy left with defendant or
other person)

I certify that I served this Summons on the Defendant as follows:

(a) - (Individual Defendant - personal):
By leaving a copy of the Summons and a copy of the Complaint with each individual Defendant
personally as follows:

Name of Defendant                                    Date of Service

_____          _____

_____          _____

(b) - (Individual Defendant - abode):
By leaving a copy of the Summons and a copy of the Complaint at the usual place of abode of
each individual Defendant with a person of his/her family of the age of 13 years or upwards, informing
that person of the contents of the Summons, and also by sending a copy of the Summons and the
Complaint in a sealed envelope with postage fully prepaid, addressed to each individual Defendant at
his/her usual place of abode, as follows:

Name of Person with whom was left          Date of service       Date of mailing

_____       _____

_____       _____

( c) - (Corporation Defendants):
By
leaving a copy of the Summons and a copy of the Complaint with the registered agent office, or agent of
each Defendant corporation as follows:

Defendant Corporation                          Registered Agent       Date of
Officer or Agent           service

_____

_____

(d) - (Other service):

_____,Sheriff of _____,County

_____,Deputy

SHERIFF'S FEES

Service and return..............$_____

Miles_____...................$_____

Total..................................$_____

_____

Sheriff of _____,County

IN THE CIRCUIT COURT
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

D███████ M███████, by              )
her mother and next best friend    )
CASSONDRA MATTHEWS                 )
                                   )
                                   )
          Petitioner,              )          2022MR000187
                                   )
vs.                                )     No. 2022-
                                   )
GRANITE CITY COMMUNITY             )
SCHOOL DISTRICT #9;                )
STEPHANIE CANN, Superintendent     )
                                   )
          Respondent.              )

## SUMMONS

TO:    STEPHANIE CANN, Superintendent via

Shane Jones, Attorney for the Defendant
**Kriha Boucek**
3 Club Centre Ct., Suite D
Edwardsville, IL 62025

You are summoned and required to appear before this Court at the Madison County Courthouse, 155 N. Main Street, Edwardsville, Illinois, on _9/15/2022_ at the hour of _11:00AM_ in Courtroom _TBA_ to attend a hearing on the Complaint, a copy of which is hereto attached. IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF ASKED IN THE COMPLAINT.

TO THE OFFICER:

This Summons must be returned by the officer or other person to whom it was given for service, with indorsement thereon of service and fees if any, immediately after service.   If service cannot be made, this Summons shall be returned so indorsed.

This Summons may not be served later than 30 days after its date.

WITNESS,_____8/12/2022_____,20___

/s/ Thomas McRae
Clerk of the Court

BY DEPUTY:___/s/ Stacey Turner___

DATE OF SERVICE:_____,20____
(To be inserted by officer on copy left with defendant or
other person)

I certify that I served this Summons on the Defendant as follows:

(a) - (Individual Defendant - personal):
By leaving a copy of the Summons and a copy of the Complaint with each individual Defendant personally as follows:

Name of Defendant                                    Date of Service

_____                    _____

_____                    _____

(b) - (Individual Defendant - abode):
By leaving a copy of the Summons and a copy of the Complaint at the usual place of abode of each individual Defendant with a person of his/her family of the age of 13 years or upwards, informing that person of the contents of the Summons, and also by sending a copy of the Summons and the Complaint in a sealed envelope with postage fully prepaid, addressed to each individual Defendant at his/her usual place of abode, as follows:

Name of Person with whom was left        Date of service        Date of mailing

_____        _____

_____        _____

( c) - (Corporation Defendants):
By
leaving a copy of the Summons and a copy of the Complaint with the registered agent office, or agent of each Defendant corporation as follows:

Defendant Corporation                    Registered Agent        Date of
Officer or Agent          service

_____

_____

(d) - (Other service):

_____,Sheriff of _____,County

_____,Deputy

SHERIFF'S FEES

Service and return..............$_____

Miles_____...................$_____

Total.................................$_____

_____

Sheriff of _____,County

IN THE CIRCUIT COURT
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

D████ M███████, by          )
her mother and next best friend )
CASSONDRA MATTHEWS          )
                            )
                            )
        Petitioner,         )
                            )                    2022MR000187
vs.                         )   No. 2022-
                            )
GRANITE CITY COMMUNITY      )
SCHOOL DISTRICT #9;         )
STEPHANIE CANN, Superintendent )
                            )
        Respondent.         )

## SUMMONS

TO:    STEPHANIE CANN, Superintendent via

Shane Jones, Attorney for the Defendant
**Kriha Boucek**
3 Club Centre Ct., Suite D
Edwardsville, IL 62025

        You are summoned and required to appear before this Court at the Madison
County Courthouse, 155 N. Main Street, Edwardsville, Illinois, on
_____9/15/2022_____ 11:00AM at the hour of ___TBA___ in Courtroom _____ to
attend a hearing on the Motion for Temporary Restraining Order and Injunction, a copy
of which is hereto attached. IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT
MAY BE TAKEN AGAINST YOU FOR THE RELIEF ASKED IN THE COMPLAINT.

        TO THE OFFICER:

        This Summons must be returned by the officer or other person to whom it was
given for service, with indorsement thereon of service and fees if any, immediately after
service.   If service cannot be made, this Summons shall be returned so indorsed.

This Summons may not be served later than 30 days after its date.

                        WITNESS,_____8/12/2022_____,20___

                               /s/ Thomas McRae
                        _____
                               Clerk of the Court
                               /s/ Stacey Turner
                        BY DEPUTY:_____

DATE OF SERVICE:_____,20____
(To be inserted by officer on copy left with defendant or
other person)

I certify that I served this Summons on the Defendant as follows:

(a) - (Individual Defendant - personal):
By leaving a copy of the Summons and a copy of the Complaint with each individual Defendant personally as follows:

Name of Defendant                                        Date of Service

_____          _____

_____          _____

(b) - (Individual Defendant - abode):
By leaving a copy of the Summons and a copy of the Complaint at the usual place of abode of each individual Defendant with a person of his/her family of the age of 13 years or upwards, informing that person of the contents of the Summons, and also by sending a copy of the Summons and the Complaint in a sealed envelope with postage fully prepaid, addressed to each individual Defendant at his/her usual place of abode, as follows:

Name of Person with whom was left          Date of service          Date of mailing

_____          _____

_____          _____

( c) - (Corporation Defendants):
By
leaving a copy of the Summons and a copy of the Complaint with the registered agent office, or agent of each Defendant corporation as follows:

Defendant Corporation                    Registered Agent    Date of Service
Officer or Agent

_____

_____

(d) - (Other service):

_____,Sheriff of _____,County

_____,Deputy

SHERIFF'S FEES

Service and return..............$_____

Miles_____...................$_____

Total..................................$_____

_____

Sheriff of _____,County

***EFILED***
Case Number 2022MR000187
Date: 8/11/2022 6:03 PM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

IN THE CIRCUIT COURT
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

D███████ M███████, by her mother )
and next best friend, CASSONDRA )
MATTHEWS, )
　 )
　　　　Petitioner, )
　 )
vs. )　　No. 2022-　　2022MR000187
　 )
GRANITE CITY COMMUNITY )
SCHOOL DISTRICT #9, )
STEPHANIE CANN, Superintendent )
　 )
　　　　Respondent. )

## COMPLAINT

Comes now the Petitioner, D███████ M███████, by her mother and next

best friend, CASSONDRA MATTHEWS, by and through Morgan Scroggins and the

Scroggins Law Office, Ltd., and in support of said Complaint, Petitioner states as

follows:

### Factual Basis

1.　　Petitioner is a resident of Granite City, Illinois, and is a student at

　　　Coolidge Junior High, a school in the Respondent's District.

2.　　Stephanie Cann is the superintendent of Granite City Community School

　　　District.

3.　　On March 28, 2022, Petitioner's friend, who was with Petitioner, was

　　　ambushed in a hallway within Coolidge Junior High. See Exhibit F.

4.   As the attacker was brutalizing Petitioner's friend on the ground with many punches, the Petitioner attempted, unsuccessfully, to pull the attacker off Petitioner's friend.

5.   Petitioner then used further force to defend her friend but was pulled away and assaulted by other attackers. One of the attackers then engaged Petitioner individually.

6.   In all instances, the Petitioner acted to defend herself or her friend from the assailants.

7.   On March 28, 2022, The Petitioner was suspended for her role in the fight. See Exhibit F.

8.   That on April 7, 2022, a final administrative hearing was held wherein the hearing officer recommended Petitioner's expulsion for one year with services. See Exhibit D.

9.   On the April 7th hearing, the Petitioner was purportedly given *verbal* notice of their right to attend and be heard at a subsequent Board meeting on April 26, 2022, regarding the ISBE administrator's recommendations. See Exhibit D.

10.  No written notice of the subsequent Board hearing on April 26, 2022, was ever given to the Petitioner.

11.  The Respondent's policy 7:210 requires that a student or their representative be provided, by registered or certified mail, a written

request to appear at a hearing to determine whether expulsion is appropriate. See Exhibit E.

12. This policy applies to both Board and pre-expulsion recommendation hearings; no attempt to distinguish between the two have been made in Respondent's policy 7:210. See Exhibit E.

13. On April 26, 2022, without any appearance by Petitioner, the Respondent and its School Board adopted the decision of the ISBE administrator.

14. The Petitioner did not receive official notification of the School Board's decision until May 26, 2022. See Exhibit B.

15. Respondent's policy 7:210 requires that its notice of expulsion contain, in sum, (i) details regarding why student's removal (i.e. expulsion) from the schooling environment is in the school's best interest; (ii) rational for the duration of the expulsion; (iii) reasoning why available behavioral and disciplinary interventions were unsuccessful or inappropriate under the circumstances; and, (iv) analysis discussing why the student's continued presence in school is improper in light of the (a) threat posed to the school community's safety or, (b) the substantial disruption, impediments, or interference with the school's operation. See Exhibit E.

16. That said notification *only* informed Petitioner that they were expelled, albeit in abeyance, for the "group fight" that occurred on March 28, 2022.

17. The Petitioner received a letter from the Respondent on or about July 29,

Page **3** of **7**

2022 informing the Petitioner that they were in fact expelled for the 2022-2023 school year. See Exhibit C ("Please be aware that under this one year expulsion. . .")

18. The letter received by the Petitioner on July 29, 2022, similar to the letter received on April 1, 2022, did not include a rationale for the duration of the expulsion in violation of 105 ILCS 5/10-22(a). See Exhibits A and B.

19. Therefore, by its own policies, the Respondent reached its decision to expel the petitioner improperly.

20. The Petitioner desires a judicial review of the Decision, a copy of which is attached as Exhibit F.

21. The Respondent is requested to file an answer consisting of the administrative record of the proceeding resulting in the Decision, including all videos and recordings.

22. The Petitioner has exhausted all available remedies under the Administrative Review Law and has no further plain, speedy, adequate remedy under the law.

### Claim I: 42 U.S.C. § 1983 Claim Based on Procedural Due Process

23. Petitioner reasserts and realleges, as fully restated herein, the allegation presented in paragraphs 1-22.

24. The Fourteenth Amendment to the United States Constitution ensures citizens of the United States against state deprivation of life, liberty, or

Page 4 of 7

property without due process of law. U.S. Const. amend. XIV.

25.   Since the Defendants failed to follow its own policies and procedures in
      expelling Petitioner, The District violated the Petitioner's procedural due
      process rights.

26.   Coolidge Junior High ended its Spring 22' semester on May 26, 2022.

27.   Petitioner was expelled on April 26, 2022 and thereby prevented from
      attending school, associating with friends, and participating in sports for
      at least 30 days.

28.   Petitioner suffered unquantifiable damages to her educational and
      athletic future for the period expelled during the Spring 2022 semester.
      These damages continually increase the longer she is expelled from the
      Defendants' District.

WHEREFORE, Petitioner respectfully requests that this Court:

A.    Review this matter pursuant to law;

B.    An order enjoining the Respondents from expelling Petitioner or
      placing them in LESSC and;

C.    For such other relief as this Court deems just and necessary.

## Claim II: 42 U.S.C. § 1983 Claim Based on Substantive Due Process

29.   Petitioner reasserts and realleges, as fully restated herein, the
      allegation presented in paragraphs 1-28.

30.   As discussed in paragraph 15 above, the Defendants' decision to

Page 5 of 7

expel the petitioner was arbitrary, grossly excessive, and constituted an abuse of discretion in which the Defendants are vested.

31.   Petitioner was expelled on April 26, 2022 and thereby prevented from attending school, associating with friends, and participating in sports for at least 30 days.

32.   Petitioner suffered unquantifiable damages to her educational and athletic future for the period expelled during the Spring 2022 semester. These damages continually increase the longer she is expelled from the Defendants' District.

WHEREFORE, Petitioner respectfully requests that this Court:

A.   Review this matter pursuant to law;

B.   An order enjoining the Respondents from expelling Petitioner or placing them in LESSC and;

C.   For such other relief as this Court deems just and necessary.

## Claim III: Complaint for Judicial Review of Administrative Decision

33.   Petitioner reasserts and realleges, as fully restated herein, the allegation presented in paragraphs 1-32

WHEREFORE, Petitioner respectfully requests that this Court:

A.   Review this matter pursuant to law;

B.   An order enjoining the Respondents from expelling Petitioner or placing them in LESSC and;

C.    For such other relief as this Court deems just and necessary.

/s/Morgan Scroggins #06202541
Scroggins Law Office Ltd.
1506 Johnson Road, Suite 200
Granite City, Illinois 62040
(618) 876-5300
clientsupport@scrogginslawoffice.com



# GRANITE CITY COMMUNITY UNIT SCHOOL DISTRICT #9

## MS. STEPHANIE M. CANN, ED.S. | SUPERINTENDENT OF SCHOOLS

April 1, 2022



Ms. Casondra Matthews
2903 E. 23rd Street
Granite City, Illinois 62040

RE: D    M    (8th Grade)
Recommendation for Expulsion of Student from School:  Group fight

Dear Ms. Matthews,

Based upon administrative review, we have determined that due to the culmination of act(s): Group fight, a recommendation will be made to the School Board of Education to expel your child from school. The School Code allows the School Board to expel a student for a definite time period not to exceed 2 calendar years, as determined on a case-by-case basis.

Your child, D    M    , is being recommended for expulsion from school for 1 year with services, if available, for the following reason(s): Group fight.

The following additional efforts to resolve threats or disruptions and minimize the length of out-of-school suspension were also provided, but have proven to be futile not deterring the actions of the student:  There were services available with the school social worker, guidance counselor, and alternate forms of interventions as well as teacher interventions at the classroom level.

**You and your child are requested to appear at a hearing before a hearing officer acting on the Board's behalf to determine if your child should be expelled from school.**

**Evidence will be presented and the Board will decide:**

1.    Whether removing your child from his or her learning environment is in the best interest of the school;

2.    What the rationale is for specific duration of the recommended expulsion;

3.    Whether all appropriate and available behavioral and disciplinary interventions were exhausted; and

4.    Whether your child's continuing presence in school should either (a) pose a threat to the safety of other students, staff, or members of the school community, or (b) substantially disrupt, impede, or interfere with the operation of the school.

GRANITE CITY COMMUNITY UNIT SCHOOL DISTRICT #9

MS. STEPHANIE M. CANN, ED.S. | SUPERINTENDENT OF SCHOOLS

| Hearing Date | Time | Location |
|---|---|---|
| April 7, 2022 | 1:00 P.M. | Granite City Board of Education |
| | | 3200 Maryville Road, Granite City, IL |

**Please contact me at 618-451-5800 extension 2007 to confirm your attendance.**

At the expulsion hearing, the Board or hearing officer will consider evidence concerning whether your child is guilty of gross disobedience or misconduct as charged and should be expelled from school. The hearing will be held in closed session. At this hearing you have each of the following rights:

1.  To be present.
2.  To be represented by counsel. You must inform the District if your child will be represented by an attorney and, if so, the attorney's name.
3.  To offer evidence.
4.  To present witnesses and cross-examine witnesses who testify.
5.  To present other reasons why your child should not be expelled.

After presentation of evidence or receipt of the hearing officer's report, the Board of Education will decide the issue of guilt and take such actions as it finds appropriate. If the Board decides to expel, the District may refer the student to appropriate and available alternative support services.

Sincerely,

Dr. David Keel
Executive Director of Educational Operations and AEP

C       Mr. Pat Curry, Coolidge Junior High School Principal
        Mr. Tom Schooley, School District Attorney
        Ms. Dottie Falter, Hearing Officer

# GRANITE CITY COMMUNITY UNIT SCHOOL DISTRICT #9

## Ms. Stephanie M. Cann, Ed.S. | Superintendent of Schools



May 26, 2022

Ms. Casondra Matthews
2903 E. 23rd Street
Granite City, Illinois 62040

RE:   Board of Education Decision on Discipline for D    M    **(8th Grade)**

Dear Parents(s):

This letter is to inform you that the Board of Education, at an official meeting held on April 26, 2022, upheld the administration's recommendation to expel D    M    in abeyance, due to her participation in a group fight. This one-year expulsion in abeyance will be from the date of the Board of Education meeting, April 26, 2022 thru April 26, 2023. Alternative education services are being discussed at this time. Please know we will follow up with an additional letter when that information is finalized.

If you have further questions regarding the action taken by the Board of Education, please contact me at 451-5800, ext. 2007, or at the Board of Education Administrative Offices, 3200 Maryville Road, Granite City, IL 62040.

Sincerely,                                    cc:    Board of Education

David Keel

Ms. Stephanie M. Cann, Ed.S., Superintendent
Mr. Pat Curry, Principal
Mr. Tom Schooley, School District Attorney

GRANITE CITY COMMUNITY UNIT SCHOOL DISTRICT #9

MS. STEPHANIE M. CANN, ED.S. | SUPERINTENDENT OF SCHOOLS



July 25, 2022

Casondra and Henry Matthews
2903 E 23rd Street
Granite City, IL 62040

RE:    Follow Up Information Regarding Expulsion of D███ M███

Dear Parents(s):

This letter is to inform you that your daughter will have the opportunity to be educated at the Lake Educational Support Services Center for the 2022-2023 school year. This is an alternative school in Granite City and bussing will be provided. While attending this program, your student will receive in person instruction and have the opportunity to earn credits and stay on pace to graduate. You will be contacted within the next week to set up an intake appointment. At this appointment, you will meet with the building principal and he will discuss the program and answer any questions you may have.

If your daughter participates in the alternative education option, you will need to complete the annual registration procedures (completing annual health information forms, updating emergency contacts, and proving residency) with our District at the beginning of this school year (August 2023). Additionally, upon completion of the expulsion, you may re-enroll your daughter in our district as long as you maintain residency in the District. The annual registration procedures and the re-enrollment will take place at 3200 Maryville Road, Granite City, IL 62040. Per GCSD9 Policy 7:190, a re-engagement plan will be developed upon your daughter's returning to school. The goal of re-engagement shall be to support the student's ability to be successful in school following a period of exclusionary discipline.

**Failure to follow classroom and school rules listed in the Granite City High School Handbook and/or Lake Educational Support Services Handbook, will result in expulsion without services.**

Please be aware that under this one-year expulsion your daughter is not allowed to come to any of the school district's campuses without the express and advance permission of the Principal. This includes after school hours and extra-curricular events.

Sincerely,

David Keel
Executive Director of Educational Operations



PLAINTIFF'S EXHIBIT 1

To:      Granite City Community School Dist. 9 Board of Education

From:   Dottie Falter, Hearing Officer

RE:     Expulsion Hearing April 7, 2022

Attending for District 9:      Dr. David Keel, Executive Director of Ed. Operations and AEP

                                  Stephanie Cann, Superintendent

                                  Mr. Tom Schooley, District Attorney

                                  Mr. Pat Curry, Coolidge Jr. High Principal

Attending for the Student:     Casondra Matthews - Mother

                                  D     M     8ᵗʰ grade

The hearing began at approximately 1:06 p.m. Dr. Keel informed attendees that the hearing would be recorded. Introductions were completed. Mr. Schooley explained the hearing process and the role of the hearing officer. He also explained the recommendation would be made to the Board of Education and that they would make the final decision regarding expulsion according to school code. The administration is recommending one year expulsion with services if available. The final decision on expulsion would be made by the Board of Education at the next scheduled meeting on April 26, 2022 at the board office. Parent and student can attend and address the Board for 3 – 5 minutes if desired. If the student and parent cannot attend, Dr. Keel will inform them of the Board's decision the following day. Mother and student were invited to ask questions at any time during the hearing as the hearings are informal.

Dr. Keel shared copies of documentation. He then discussed the copy of D    s ten day out of school suspension letter informing the parent of D    being involved in a group fight; would not follow staff directions and would not stop fighting resulting in out of school suspension. **Policy 7:200** was shared and discussed. Dr. Keel explained that procedures were followed for suspension per Granite City School District policy. D    s letter for expulsion was presented. It explains the recommendation for one year expulsion with services if available due to her involvement in a group fight and refusal to follow staff directions and stop fighting. A letter advising of the expulsion hearing was also shared. Dr. Keel shared **Policy 7:210** which discusses the expulsion procedures and shows the administration followed the policy of the district. D    's attendance report was also discussed. The first semester report card shows 6 excused absences, 10 unexcused and 64 tardies. Mother disagreed with attendance stating she calls each time D    is absent. D    's grade report indicated grades for the first semester were; C – science, F – stem, A – Spanish, C – math, R (credit) band, C – social studies, B – Band, A – PE/Band, and A – language arts. Third quarter grades are; A – band, A – PE/band, B – healthy life, C – science – B – social studies, and C – language arts. D    's discipline report was shared. This report included discipline for the 3/28/22 fight. Other discipline noted was mainly for tardies.

The Coolidge Junior High School Handbook regarding student behavior was referenced on **pg. 32, #9 and #21** – both of which are copies of the **Policy 7:190** that are included in the student handbook.

**Policy 7:190** was shared by Dr. Keel. This policy discusses prohibited student behavior. He referenced and read **pg. 2 #9** – "Engaging in hazing or any kind of bullying or aggressive behavior that does physical or psychological harm to a staff person or another student, or urging other students to engage in such conduct. Prohibited conduct specifically includes, without limitation, any use of violence, intimidation, force, noise, coercion, threats, stalking, harassment, sexual harassment, public humiliation, theft or destruction of property, retaliation, hazing bullying, bullying using a school computer network, or other comparable conduct". Also read was **pg. 3 #21** – "engaging in any activity, on or off campus, that interferes with, disrupts, or adversely affects the school environment, school operations, or an education function, including but not limited to, conduct that may (b) endanger the health or safety of students, staff, or school property".

Dr. Keel asked D⬜ to identify and read a written statement she had given to Mr. Curry. She agreed it was her statement and read; " M⬜ was the one that started all of this. She was talking stuff on the internet won't say nothing to nobody face. Then she want to run up on my friend so I jumped in then her other friend jumped in and started to go after me".

Dr. Keel shared a video of the fight 3/28/22. D⬜ is idented on the left in the hallway with A⬜ The video shows A⬜ getting into a fight and D⬜ jumping in. The incident took place passing period 6th period. Mr. Curry shares D⬜s schedule to confirm she was to be in the same hallway for her next class. No reason to be at the intersection. D⬜ explains she came down to meet A⬜ Video shows fighting, D⬜ jumps in with 2 girls then out and next engages with 2 other girls on the other side of the hall. A teacher tries to break it up. The fight moves to a side hallway where the girls are shown continuing to punch and fight. Another teacher arrives and breaks it up. They are shown coming from behind the stairwell with the teacher. Another video was viewed showing the two girls fighting in the side hall. Both are pulling hair, punching. D⬜ confirms she was fighting with E⬜.

Mr. Curry shared information he had gathered as a result of his investigation of the incident. "It is my understanding in talking with students, your friend A⬜ made comments about one of the other girl's cousins who died in the amusement park. Some stuff went on on social media, comments, that A⬜ and M⬜ her friends wanted to fight. You said yourself you jumped in because it was your friend. You met up and stood at the "t". Those 3 girls are coming and you're waiting. It was also discussed this was to transpire outside of school but a couple couldn't make it so it was decided to do it in the hallway. Is that accurate?" "Yes". Mother questioned if the whole story was accurate? D⬜ responds, "Yes, except for the dude from Florida. I don't think she was talking about him". "You didn't know there was going to be a fight that day? No. What were you thinking? You were the first to jump in. First I tried helping and then I tried pulling her off. Then I started punching. That's the context I understand Mr. Curry stated. "Some have said the fight was supposed to happen on Sunday and that led to it coming to school. Is that accurate? No. You didn't know there was going to be a fight? No. Did you know A⬜ sent text messages that she wanted to fight her? Yes." Anything else you would like to share? No.

Mr. Schooley asks D⬜ "there is a short period where you and the girl disengage. Then you end up fighting down the hall. Tell us what happened." D⬜ replies, "E⬜ came at me and started throwing

punches at me.  Do you remember the teacher telling you to stop? No, I don't remember that at all. What would you do differently?   Not throw punches at nobody".

**Policy 7:215** was examined.  Dr. Keel explained, "if a student is suspended or expelled for any reason from any public or private school in this or any other state, the student must complete the entire term of suspension or expulsion before being admitted into the school district".  Dr. Keel explained if expelled, you must serve the entire year of expulsion and are not allowed on any school campus or at any school functions during the time of expulsion.  If they do not attend the Board meeting on April 26, 2022, Dr. Keel will call to notify them of the Board's final decision.

The hearing concluded at 2:41 p.m.


It is the recommendation of the hearing officer that the recommendation to expel D    M    (8th grade) for one calendar year with services if available be upheld at the Board of Education meeting that will be held on April 26, 2022.


PLAINTIFF'S
EXHIBIT
tabbies
E

Granite City C.U.S.D. #9

7:210

## Students

This policy becomes effective and replaces the current policy on *Expulsion Procedures* on the first student attendance day of the 2016-2017 school year.

### Expulsion Procedures

The Superintendent or designee shall implement expulsion procedures that provide, at a minimum, for the following:

1. Before a student may be expelled, the student and his or her parent(s)/guardian(s) shall be provided a written request to appear at a hearing to determine whether the student should be expelled. The request shall be sent by registered or certified mail, return receipt requested.  The request shall:

    a. Include the time, date, and place for the hearing.

    b. Briefly describe what will happen during the hearing.

    c. Detail the specific act of gross disobedience or misconduct resulting in the decision to recommend expulsion.

    d. List the student's prior suspension(s).

    e. State that the School Code allows the School Board to expel a student for a definite period of time not to exceed 2 calendar years, as determined on a case-by-case basis.

    f. Ask that the student or parent(s)/guardian(s) or attorney inform the Superintendent or Board Attorney if the student will be represented by an attorney and, if so, the attorney's name and contact information.

2. Unless the student and parent(s)/guardian(s) indicate that they do not want a hearing or fail to appear at the designated time and place, the hearing will proceed. It shall be conducted by the Board or a hearing officer appointed by it.  If a hearing officer is appointed, he or she shall report to the Board the evidence presented at the hearing and the Board shall take such final action as it finds appropriate. Whenever there is evidence that mental illness may be the cause for the recommended expulsion, the Superintendent or designee shall invite a representative from the Dept. of Human Services to consult with the Board.

3. During the expulsion hearing, the Board or hearing officer shall hear evidence concerning whether the student is guilty of the gross disobedience or misconduct as charged. School officials must provide: (1) testimony of any other interventions attempted and exhausted or of their determination that no other appropriate and available interventions were available for the student, and (2) evidence of the threat or disruption posed by the student. The student and his or her parent(s)/guardian(s) may be represented by counsel, offer evidence, present witnesses, cross-examine witnesses who testified, and otherwise present reasons why the student should not be expelled. After presentation of the evidence or receipt of the hearing officer's report, the Board shall decide the issue of guilt and take such action as it finds appropriate.

4. If the Board acts to expel the student, its written expulsion decision shall:

    a. Detail the specific reason why removing the student from his or her learning environment is in the best interest of the school.

    b. Provide a rationale for the specific duration of the recommended expulsion.

    c. Document how school officials determined that all behavioral and disciplinary interventions have been exhausted by specifying which interventions were attempted or whether school officials determined that no other appropriate and available interventions existed for the student.

    d.  Document how the student's continuing presence in school would (1) pose a threat to the safety of other students, staff, or members of the school community, or (2) substantially disrupt, impede, or interfere with the operation of the school.

5.  Upon expulsion, the District may refer the student to appropriate and available support services.

| | |
|---|---|
| LEGAL REF.: | 105 ILCS 5/10-22.6(a). <br> Goss v. Lopez, 95 S.Ct. 729 (1975). |
| CROSS REF.: | 5:100 (Staff Development); 7:130 (Student Rights and Responsibilities), 7:190 (Student Behavior), 7:200 (Suspension Procedures), 7:230 (Misconduct by Students with Disabilities) |

| | |
|---|---|
| Adopted: | 8/10/2004 |
| Revised: | 12/8/2008, 11/10/2009, 4/12/2016 |

# Granite City Community Unit School District #9

## COOLIDGE JUNIOR HIGH SCHOOL



**PLAINTIFF'S EXHIBIT**
F

March 28, 2022

Casondra Matthews
2903 E 23rd St
Granite City, IL 62040

Dear Parent(s) and/or Guardian(s),

This letter is to officially inform you that your daughter, D      M      8th Grade, has been suspended from Coolidge Junior High School for (10) days. This suspension will begin on Tuesday, March 29, 2022. Their return to school is scheduled to be Tuesday, April 12, 2022.

**Incident:** D    was involved in a physical altercation during the end of 5th hour and start of 6th hour passing period. The altercation involved multiple students, where it is clear that D    threw multiple punches.
**Incident Date:** March 28, 2022.

**Handbook Violation:** These actions directly violate the district's policy regarding student behavior.  Please reference (Policy 7:190) Student Behavior.

**Interventions:** Building-wide steps for intervention have included school-wide notification presented to the entire school community through the Student Handbook: A Guide for Students and Parents. School-wide positive behavior intervention support programs are in place to promote good choices that all staff utilize to encourage appropriate behavior.

As required by the Illinois School Code, your child has been informed about this suspension and the reasoning for it. Your child has been given the opportunity to respond to the charges stated. During the period of suspension, your child may not be present on any GCSD9 school grounds or participate in any GCSD9 school activities. Failure to comply with this directive constitutes a trespass and will be dealt with accordingly. Your child will be given an opportunity to complete missed assignments or work during the suspension for equivalent academic credit.

According to the Illinois School Code, Chapter 105, Section 5/10-22.6(b), you shall receive this notice of the suspension and have a right to a hearing. If you wish to exercise your right to a review concerning this suspension, you should notify the Executive Director of Operations in writing within ten days and he will arrange a hearing.

If you have any questions regarding this suspension, please contact me. I can be reached at Coolidge Junior High School at 451-5826 between the hours of 7:15 A.M and 3:45 P.M

Please follow through if one of the following is checked. If nothing is checked, no further contact is necessary.

_____ A parent conference is not required before your child returns to school.

_____ A parent conference is recommended before your child returns to school.
Call Coolidge Junior High School at 451-5826 to schedule.

_____ A Re-Engagement Conference is mandatory and must be conducted before your child returns to school.
Call Coolidge Junior High School at 451-5826 to schedule.



# Granite City Community Unit School District #9

## COOLIDGE JUNIOR HIGH SCHOOL

__X__ This incident is under administrative review. Additional correspondence with you will be forthcoming from the Executive Director of Operations or his designee.

_____ Assessment by an approved agency as consideration for early return.
Call the Director of Secondary Education at 451-5800, ext. 2006 for information.

_____ Alternative education placement may be an option.
Call the Executive Director of Operations at 451-5800, ext. 2006 if interested.

Additional guidelines for return will be considered at the conference mentioned above.

Sincerely,

Coolidge Junior High School Administration

\*\*\*EFILED\*\*\*
Case Number 2022MR000187
Date: 8/11/2022 6:03 PM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

IN THE CIRCUIT COURT
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

D    M      by
her mother and next best friend
CASSONDRA MATTHEWS     )
)
)
)
)
Petitioner,     )
)
vs.     )   No. 2022-  2022MR000187
)
GRANITE CITY COMMUNITY     )
SCHOOL DISTRICT #9;     )
STEPHANIE CANN, Superintendent )
)
Respondent.     )

## MOTION FOR TEMPORARY RESTRAINING ORDER AND INJUNCTION

Comes now the Petitioner, D    M    , by her mother and next best friend, CASSONDRA MATTHEWS, by and through Morgan Scroggins and the Scroggins Law Office, Ltd., motioning this Court to grant a Temporary Restraining Order (hereinafter "TRO") and Preliminary Injunction prohibiting the Respondents from expelling Petitioner from their school until the underlying claim for relief can be heard and decided. In support of said Motion, Petitioner states as follows:

### A. Factual Basis

1.    Petitioner is a student at Coolidge Junior High, a school in the Respondent's District.

2.    Respondent Stephanie Cann is the Superintendent of Granite City

Page 1 of 17

Community School District.

3.    There was an alleged altercation that occurred on March 28, 2022, wherein several children were involved in a fight.

4.    Petitioner's friend, A⬛⬛⬛, was attacked by another child and Petitioner tried to protect her friend from the attacker. The attackers then started attacking Petitioner.

5.    Petitioner was forced to defend herself from the new attackers, as the videos show.

6.    As a result, the Respondent decided to suspend the Petitioner on March 28, 2022, and recommended to the board that a 1 year expulsion with services begin on April 1, 2022. See Exhibits F and A.

7.    At the April 7, 2022, recorded meeting regarding the recommended expulsion, the Respondents failed to indicate to the Petitioner, *in any manner*, that the Petitioner may appear and be heard about the expulsion at the April 26, 2022 Board meeting where the Board would make a final decision regarding the expulsion. See Exhibit D.

8.    Pursuant to Granite City Unit School District (hereinafter "G.C.U.S.D.") Policy 7:210 (1) such notice must be given by registered or certified mail. See Exhibit E.

9.    G.C.U.S.D. Policy 7:210(3) states that school officials at the expulsion hearing must provide (i) testimony that no alternatives were available or

appropriate for the offending student and, (2) evidence of threat or disruption posed by the student. See Exhibit E.

10.   As shown in recorded hearing and Exhibit D, there was no evidence presented to the board by the hearing officer or other school officials, that has heretofore been disclosed to the Petitioner, that the school has attempted or considered less punitive consequences for the Petitioner regarding her conduct.

11.   G.C.U.S.D. Policy 7:210 (4)(a-d) states that if the Respondent's Board elects to expel the student, its written expulsion decision **shall**, in sum, (i) detail the specific reason why removing the offending student is in the best interests of the school; (ii) provide rationale supporting the duration of the expulsion; (iii) document how the Board determined that all behavioral and disciplinary interventions have been exhausted by specifying which interventions were attempted or deemed inappropriate yet available for the offending student. See Exhibit E.

12.   However, the Respondent's Board, in their decision actually expelling Petitioner, failed to discuss any of the topics outlined in paragraph 10 above. See Exhibit B and C. There was no discussion of such topics at the recorded expulsion hearing that Petitioner actually attended. See Exhibit D.

13.   Due to multiple procedural failures, the Respondent's Board was not

Page **3** of **17**

properly informed in their decision making and thereby rendered a truly
arbitrary decision—detached from any reason—in expelling Petitioner.

14.    Petitioner's school record indicates that she is a good student, active in
       sports and earns good grades.

15.    Petitioner had no other disciplinary issues except prior tardiness.

16.    The Respondent's decision to expel the minor child will cause irreparable
       harm to the minor child.

## B. Discussion

The Petitioner is entitled to a TRO against the Respondent prohibiting them
from enforcing the expulsion against the Petitioner since (1) the Respondents failed to
follow their own procedures, thereby denying Petitioner of procedural due process
and (2) abused their discretion by making a truly arbitrary decision when electing to
expel the Petitioner.

Illinois and federal courts consistently describe a TRO as an equitable remedy
that is issued in exceptional and emergency circumstances when necessary to
preserve the status quo until the court has an opportunity to rule on a motion for
preliminary injunction after an evidentiary hearing. *See, e.g.*, *Coca-Cola Co. v. Alma-
Leo U.S.A., Inc.*, 719 F. Supp. 725, 726- 27 (N.D. Ill. 1989). *Northwestern Steel &
Wire Co. v. Indus. Comm'n*, 254 Ill. App. 3d 472, 476, 627 N.E.2d 71, 75 (1st Dist.
1993) (defining "status quo" as the last actual, peaceable, uncontested status

Page **4** of **17**

preceding the controversy). A TRO should be granted if the movant can show, by a preponderance of the evidence, that. "(i) [they] possesses a certain and clearly ascertainable right needing protection, (ii) [they have] no adequate remedy at law, (iii) [they] would suffer irreparable harm without the TRO, and (iv) [they have] a likelihood of success on the merits." *Lo v. Provena Covenant Medical Center,* 342 Ill.App.3d 975, 987, 277 Ill.Dec. 521, 796 N.E.2d 607 (2003); *Wilson ex rel. Geiger v. Hinsdale Elementary Sch. Dist.* 349 Ill.App.3d 243,248 (Ill. App. 2d Dist. 2004)

### 1. The Respondents have violated Petitioner's Procedural Due Process rights by failing to uphold their own procedures in expelling Petitioner.

(i)    The Petitioner has a right to public education that needs to be protected.

Under Illinois law, a student has a legitimate entitlement to a public education, which forms a property interest protected by due process, that may not be arbitrarily taken away without adherence to minimal procedural safeguards. *Goss v. Lopez* (1975), 419 U.S. 565, 574, 95 S.Ct. 729, 736, 42 L.Ed.2d 725, 734–35. Here, there is no doubt that Petitioner has a property interest in attending Respondent's school. The Respondents' May 26, 2022, and July 25, 2022, letters reflect that this interest is threatened by the school district in the form of a one-year expulsion which will be enforced over the 2022-2023 school year. See Exhibit B and C. Therefore, the Petitioner easily satisfies the first element required to obtain a TRO.

(ii)    The Petitioner has no adequate remedy at law.

Here, Petitioner appeared at the expulsion hearing presided over by the hearing

officer on April 7, 2022. See Exhibit A. Based on the officer's report, the Respondent's board convened and upheld the Petitioner's expulsion. Therefore, there are no other available remedies at law other than from this Court.

(iii)   The Plaintiff will suffer irreparable harm from the expulsion

At issue is whether Petitioner's attendance at Lake  Educational Support Services Center ( hereinafter "LESSC") rather than Granite City High School would irreparably injure Petitioner.

Under the Illinois Constitution it is recognized that educational development of all persons is a fundamental goal. *Ill. Const. Art. X.* § 1. Here, on April 26, 2022, and July 25, 2022, Petitioner was expelled from the Respondents' main school, Granite City High School and placed in LESSC, an alternative school, for the 2022-2023 school year. Petitioner's forced attendance at this school will adversely affect the Petitioner in many ways.

First, a quick reference to https://www.gcsd9.net/Content2/384 reveals that LESSC has a significantly shorter school day that Granite City High School. It is unclear what content from the normal schedule has been cut at LESSC. However, this lost education time is undoubtedly to the Petitioner's detriment and severely impedes her ability to secure enrollment at college later.

Second, Petitioner will be unable to pursue athletic opportunities during her expulsion and will be separated from many of her friends. The inability to compete in sports against her peers will stunt her athletic growth and significantly impede her

Page **6** of **17**

ability to acquire scholarships from colleges later.

Finally, In *Huebener v. Board*, the court recognized that alternative placement places significant detriments on educating students to their fullest potential by, *inter alia*, isolating the students from their friends and other associative activities high schools often grant. *Huebner v. Board of Educ. Of Twp. High School District 211*, 1997 U.S. Dist. LEXIS 3568, 24\*-25\*; James Naughton, *Disciplinary Placements in Alternative Schools: Reflections on Student Impact*, 31 DCBA Brief 22, 23 (2019) (Showing that students in alternative school are more likely to (i) not graduate, (ii) suffer depression, (iii) be subject to increased pressure to consume alcohol or drugs, (iv) experience lesser educational opportunities due to lesser funding of alternative schools. Therefore it is clear that the Petitioner will suffer irreparable harm if she is placed at LESSC.

(iv)     Petitioner has a high likelihood of success on the merits.

Generally, the due process rights articulated in Article I of the Illinois Constitution ensures that a person with a property interest receive notice and an opportunity to be heard to protect that interest from state deprivation. *Kazubowski v. Kazubowski* (1970), 45 Ill.2d 405, 417–18, 259 N.E.2d 282. As noted above, students have a legitimate entitlement constituting a property interest in public education warranting due process protection against arbitrary deprivations. *Goss v. Lopez* (1975), 419 U.S. 565, 574, 95 S.Ct. 729, 736, 42 L.Ed.2d 725, 734–35.

Illinois courts have held that this property interest in public education is defined

by existing rules and understandings that arise from independent sources (i.e. a statute or school policy). *Camlin v. Beecher Community School Dist.* 339 Ill.App.3d 1013, 1018-1019. Particularly, when a school has developed rules controlling disciplinary procedures, violation of those procedures when depriving students of their attendance rights also violates their due process rights. *Id (discussing Lewis v. Hayes, 152 Ill.App.3d 1020, 106 Ill.Dec. 102, 505 N.E.2d 408 (1987) and Fernandes v. Nolen, 228 Ill.App.3d 424, 170 Ill.Dec. 471, 592 N.E.2d 1151 (1992))*

The *Camlin* court provided an excellent example of these rules in application. In *Camlin,* a student sought a preliminary injunction against a school board that had expelled a student for violation of its drug policies. *Camlin* at 339 Ill.App.3d 1013, 1014. However, the *Camlin* school's discipline policy gave a first time offender of the school's drug policy the opportunity to enter a treatment program or suffer a *suspension. Id* at 1019. The school instead chose to *expel* the student without granting the student an opportunity to engage in a treatment plan. *Id.* The *Camlin* court found this denial to violate the student's due process rights in the school's own procedures. *Id.*

Here, Respondent's policy 7:210 requires that, if the board acts to expel the student, its written decision must include several details including: (i) the specific reason why removing the student from their learning environment is in the best interest of the school; (ii) rationale supporting the expulsion's duration; (iii) documentation regarding how disciplinary and behavioral interventions were

Page **8** of **17**

exhausted or otherwise inapplicable; and, (iv) documentation regarding how the student's continued presence in the school would (a) pose a threat to the safety of the school or (b) create substantial interruption to the operation of the school. *See* Exhibit E at (4)(a-d). The Board's written expulsion failed to address any of these factors. Similar to *Camlin*, the Petitioner had a justifiable expectation in the notice requirements outlined in the Respondent's policies that the board would consider multiple factors in determining whether to expel the Petitioner from its schools. In their haste, Respondents failed to do this.

Moreover, Respondent's policy 7:210 also relays that school officials must provide evidence of interventions attempted and exhausted or otherwise deemed available but inappropriate under the circumstances *at the expulsion hearing*. *See* Exhibit *E* at (3). Although this evidence was arguably presented via Respondent's letter to Petitioner on April 1, 2022, no such evidence was presented at the hearing itself or in the Hearing Officer's report.

Lastly, G.C.U.S.D. policy 7:210 outlines the procedures that must be followed to properly perform an expulsion. *See* Exhibit E. The policy shows that the Respondent *shall* provide the student and their parents with a written request to appear at a hearing to determine whether the student should be expelled. *Id at* (1). This request must be filled with several items of information and given at an expulsion hearing with the Hearing Officer *or the Respondent's Board. Id* at (1)(a – f); *See* Exhibit E at (2)-(3). Although the Hearing Officer's report about the April 7, 2022 expulsion hearing

Page **9** of **17**

claimed that the Petitioner was informed that they could attend and address the Board at the meeting on April 26, 2022, the recording of the meeting fails to reflect any such notice. *Compare* Exhibit D. Without delivering proper notice of the right to attend and be heard at the subsequent Board hearing regarding expulsion on April 26. 2022, the Respondents violated Petitioner's due process rights at that meeting where they expelled them without the notice.

Therefore, as in *Camlin*, this Court should enter a TRO and preliminary injunction against the Respondent's as the Petitioner has a high likelihood of success at trial on proving a violation of their procedural due process rights.

**2. The Respondent's Board abused their discretion when they decided to expel the Petitioner despite her academic and athletic record, disciplinary history, and minor role in the altercation on March 28, 2022.**

This issue should turn on whether the Petitioner's conduct was sufficiently egregious to justify her expulsion for one year.

Under Illinois law, courts are hesitant to review school disciplinary decisions. *Donaldson v. The Board of Education for Danville School District No. 118,* 98 Ill.App.3d 438, 439. However, Illinois' courts have recognized that school officials making disciplinary decisions are not infallible. *Robinson v. Oak Park and River Forest High School.,* 213 Ill.App.3d 77,81 (First District, 1991). Applicable here, a school's decision to expel or suspend a child will be reversed when the school board abuses its discretion (e.g. its decision is arbitrary, unreasonable, capricious

Page **10** of **17**

or oppressive). *Wilson* v. *Collinsville Community Unity School District No. 10,* 116, Ill.App.3d 557 (Fifth District, 1983) (Citing *Donaldson* at 98 Ill.Aoo.3d 438, 453). In determining whether the school board has abused its discretion, courts consider: (i) the egregiousness of the student's conduct; (ii) the student's past conduct; (iii) the chance that such conduct will impact educational services offered to other students; (iv) the punishment's severity; and (v) the interests of the child. *Robinson at* 82.

    (i)    Petitioner's conduct underlying the expulsion was not egregious.

Illinois courts have recognized that all types of participation in a fight should not be treated equally. *Robinson at* 82. For instance, in *Robinson,* there was a similar "group fight" in which the plaintiff was involved. *Id at* 78-79. There, a fellow student began the confrontation by pushing a third student which in due course swung at the plaintiff who defended themselves and struck the attacker. *Id.* In *Robinson, the* court found that the plaintiff's conduct was not sufficiently egregious when it constituted self-defense. *Id* at 82. The imposition of an expulsion for the remainder of the school year (i.e. 6 months in *Robinson*) was unreasonably disproportionate to the plaintiff's conduct. *Id.*

Here, the Respondent's policy prohibits aggressive physical behavior against other students or other activities that disrupt the school environment. *See* Exhibit  J at (9) and (21). However, the Board's interpretation and application of that policy ignores the fact that policy violations have degrees of wrongfulness. In fact, the

Page **11** of 17

Respondent's policy fails to consider that instances of force may be justified. *See Generally* Exhibit J. Although Petitioner actions certainly violated the written terms of Respondent's policy through a dry reading, there is no policy regarding defending a person who is being physically assaulted at school. *See* Exhibit J.

As in *Robinson*, it is clear that Petitioner did not plan or start this fight. See Exhibit D. Videos presented by the Respondents show Petitioner and her friend walking down a hallway with backpacks on. Meanwhile, the cell phone video shows the attacker approached and assaulted the Petitioner's friend without any school material in hand. This attack was targeted, planned, and against the unsuspecting Petitioner and friend who were walking peaceably down the hallway with their backpacks on. *See* Exhibit D ("you didn't know there was going to be a fight that day? No") .

Finally, regarding the altercation, the Petitioner's friend was face-down on the ground with the attacker punching their head. The Petitioner stepped in to prevent her friend from being brutalized in an ambush. Therefore, it cannot be argued that Petitioner's response to pull the attacker off of her friend and attack with fists when that failed is egregious—or even wrong. *See Also Robinson* at 81-81-82 (recognizing that although self defense may not be an appropriate response to some situations, it lacks certain egregiousness to warrant expulsion for many months).

Respondents may try to argue that the expulsion was for reengagement in the

Page **12** of **17**

fight and not for Petitioner's activities in defending her friend. *See* Exhibit D. However, the cell phone video shows that, when the Petitioner was pulled away from protecting her friend, the people pulling her off were also attacking Petitioner. Next, the second attacker (the girl in the white T-Shirt) prepares themselves to attack, and then attacks the Petitioner while forcing Petitioner in the side hallway. Together, these facts show that there were not multiple fights, but one continuous conflict wherein the Petitioner and her friend were always under attack. Therefore, the characterization that there was any break in the conflict, or even separate fights, is inaccurate. The Petitioner's conduct here is simply not egregious—which leans heavily towards finding that the board abused its discretion in expelling Petitioner.

(ii)     The Petitioner's past conduct does not support expulsion.

Here, the facts show that, aside from persistent tardiness, the Petitioner's disciplinary record was unblemished. *See* Exhibit K. Therefore, this factor also leans heavily towards finding that the Respondent abused its discretion in expelling Petitioner. See also *Wilson ex rel. Geiger v. Hinsdale Elementary School Dist. 181,* 349 Ill.App.3d 243, 251-252.

(iii)     Petitioner's attempt to defend herself and her friend had minimal impact on educational services offered to other students at the Respondents' school.

This issue will turn on the significance of a disruption caused by, at most, a four

Page **13** of **17**

minute altercation had on educational services offered to other students.

For example, in *Wilson ex rel. Geiger,* the court found that substantial disruption existed when a student's release of a violent mixed tape about the teacher caused the teacher to cease teaching other students for a day and required further investigations by both police and teachers. *Wilson ex rel. Geiger* at 252. Here, the videos show that the fight between the attackers, Petitioner, and her friend lasted approximately 4 minutes or less and occurred during a passing period. Students were not being taught during this period. In fact, the fight seems to have caused minimal, if any, disruption to the flow of foot traffic in the hallway. Instead, it appears that two teachers quickly responded to the incident and resolved it within minutes. The dissimilarity in disruption between *Wilson ex rel. Geiger* and this case are striking. Therefore, this factor has minimal, if any, lean towards not finding the board abused its discretion in expelling Petitioner given the fact that teaching time was not disrupted by Petitioner's conduct.

(iv)   The expulsion the Respondent imposed on Petitioner is one of its most severe punishments available in its repertoire.

In *Wilson ex. rel. Geiger,* the court found that expulsion is the most severe punishment a school can inflict upon a student. *Id.* Here, the Respondent's have expelled Petitioner to LESSC for one year, which is nearly the most severe punishment Respondent can dole out for an offense. *See* Exhibit J *(*showing expulsion can last up to two years); *See also Wilson ex. rel. Geiger* at 252.

While the Respondents may attempt to argue that their response is "measured"

(or reasonable) in light of the options available. *Id.* However, unlike *Wilson ex rel Geiger*, the Petitioner is adamantly against the one year expulsion, made no recommendation for a shorter expulsion, and neither the Board, hearing officer, or the expulsion hearing itself included discussion of the rationale supporting the expulsion's duration. *Id at 252-253;* Exhibit B and D. This Court should not consider a blind cut to be a measured one. Therefore, given the fact that alternative punishments including, *inter alia*, out of school suspensions, in-school supervision, and community service were available, expulsion to LESSC is disproportionate, severe punishment in light of the Petitioner's conduct.

The Respondents may also attempt to argue that their placement of Petitioner into LESSC is less severe than expulsion. As noted earlier, Petitioner will suffer many detrimental effects due to the placement at LESSC, the alternative school for Respondent's school district. This placement will likely pose a "drastic interruption" and an extremely unfortunate impact on Petitioner's academic progress which has been steadily improving during her last semester. *Robinson* at 81-82; Exhibit D. It will also severely impede her athletic progress. *Robinson* at 81-82; Exhibit D.  Therefore, regardless of how the punishment is characterized, its extreme, uncalculated severity shows that the board abused its discretion in expelling the Petitioner.

    (v)    The Petitioner's interests are against the expulsion as it will have a severe, detrimental effect on her academic and athletic opportunities from which Petitioner may never recover.

Page **15** of **17**

Here, as in *Wilson ex rel. Geiger,* the Respondent may argue that the expulsion period will impress upon Petitioner the seriousness of her misconduct. *Wilson ex rel. Geiger at* 252. However, the logic argued by the court in *Wilson ex rel. Geiger* is not directly applicable as Petitioner's conduct was not as "active" under the circumstances vis-à-vis releasing a mix tape threatening a teacher's unborn child. *Id* at 253. The attackers, not the Petitioner, chose this fight. Exhibit D. The Respondents should not argue that what they want to impress on the Petitioner is to abandon their friends when they are physically brutalized in front of their eyes. Therefore, the student's interests, even their best interests, are strongly opposed to the expulsion rendered by the Respondents.

Since the other elements required for a TRO and Preliminary injunction have been satisfied, as shown above, the Petitioner has shown that they have a high likelihood of succeeding on the merits at trial. Therefore, a TRO and Preliminary Injunction should be granted prohibiting the Respondent's from expelling the Petitioner or placing them in LESSC.

3. Preliminary Injunction

Under Illinois law, the purpose of a preliminary injunction is to preserve the rights of the parties or the state of affairs until the case can be disposed of on its merits. *Kalbfleisch ex rel. Kalbfleisch v. Columbia Community Unit Sch. No. 4,* 396 Ill.App.3d 1105, 112. (Ill. App. 5th Dist. 2009) In addition to the proofs required to be granted a TRO, a plaintiff must show that the balance of hardships between the

Page **16** of **17**

parties favor in granting a preliminary injunction. *See Delta Med. Sys. V. Mid-America Med. Sys., Inc.,* 331 Ill.App.3d 777,789.

Here, the Petitioner was attending Coolidge Junior High School in 8th grade at the time of the original suspension. If not for the Respondent's decision, Petitioner would be attending Respondent's main high school instead of an alternative school. As discussed above, this placement will significantly harm her interest in receiving a quality education. Meanwhile, permitting Petitioner's attendance at Respondent's main high school during the pendency of this action poses little or no detriment to Respondent's interest—after all, the Petitioner's disciplinary record is otherwise spotless when not considering tardiness. Therefore, this Court should grant the Petitioner a preliminary injunction prohibiting the Respondents from expelling Petitioner and placing her in LESSC.

WHEREFORE, Petitioner respectfully requests that this Court:

A.    Enter an Order restraining the Respondent from expelling the Petitioner from school; and ;

B.    For such other relief as this Court deems just and necessary.

/s/Morgan Scroggins #06202541
Scroggins Law Office Ltd.
1506 Johnson Road, Suite 200
Granite City, Illinois 62040
(618) 876-5300
clientsupport@scrogginslawoffice.com

Page **17** of **17**



# GRANITE CITY COMMUNITY UNIT SCHOOL DISTRICT #9

## MS. STEPHANIE M. CANN, ED.S. | SUPERINTENDENT OF SCHOOLS

April 1, 2022



**PLAINTIFF'S EXHIBIT**

A

Ms. Casondra Matthews
2903 E. 23rd Street
Granite City, Illinois 62040

RE: D     M     (8th Grade)
Recommendation for Expulsion of Student from School: Group fight

Dear Ms. Matthews,

Based upon administrative review, we have determined that due to the culmination of act(s): Group fight, a recommendation will be made to the School Board of Education to expel your child from school. The School Code allows the School Board to expel a student for a definite time period not to exceed 2 calendar years, as determined on a case-by-case basis.

Your child, D     M     , is being recommended for expulsion from school for 1 year with services, if available, for the following reason(s): Group fight.

The following additional efforts to resolve threats or disruptions and minimize the length of out-of-school suspension were also provided, but have proven to be futile not deterring the actions of the student: There were services available with the school social worker, guidance counselor, and alternate forms of interventions as well as teacher interventions at the classroom level.

**You and your child are requested to appear at a hearing before a hearing officer acting on the Board's behalf to determine if your child should be expelled from school.**

**Evidence will be presented and the Board will decide:**

1.  Whether removing your child from his or her learning environment is in the best interest of the school;

2.  What the rationale is for specific duration of the recommended expulsion;

3.  Whether all appropriate and available behavioral and disciplinary interventions were exhausted; and

4.  Whether your child's continuing presence in school should either (a) pose a threat to the safety of other students, staff, or members of the school community, or (b) substantially disrupt, impede, or interfere with the operation of the school.

# GRANITE CITY COMMUNITY UNIT SCHOOL DISTRICT #9

## Ms. Stephanie M. Cann, Ed.S. | Superintendent of Schools

| Hearing Date | Time | Location |
|---|---|---|
| **April 7, 2022** | **1:00 P.M.** | **Granite City Board of Education** |
| | | **3200 Maryville Road, Granite City, IL** |

**Please contact me at 618-451-5800 extension 2007 to confirm your attendance.**

At the expulsion hearing, the Board or hearing officer will consider evidence concerning whether your child is guilty of gross disobedience or misconduct as charged and should be expelled from school. The hearing will be held in closed session. At this hearing you have each of the following rights:

1. To be present.
2. To be represented by counsel. You must inform the District if your child will be represented by an attorney and, if so, the attorney's name.
3. To offer evidence.
4. To present witnesses and cross-examine witnesses who testify.
5. To present other reasons why your child should not be expelled.

After presentation of evidence or receipt of the hearing officer's report, the Board of Education will decide the issue of guilt and take such actions as it finds appropriate. If the Board decides to expel, the District may refer the student to appropriate and available alternative support services.

Sincerely,

Dr. David Keel
Executive Director of Educational Operations and AEP

C    Mr. Pat Curry, Coolidge Junior High School Principal
     Mr. Tom Schooley, School District Attorney
     Ms. Dottie Falter, Hearing Officer

# GRANITE CITY COMMUNITY UNIT SCHOOL DISTRICT #9

## MS. STEPHANIE M. CANN, ED.S. | SUPERINTENDENT OF SCHOOLS



**PLAINTIFF'S EXHIBIT**

B

May 26, 2022

Ms. Casondra Matthews
2903 E. 23rd Street
Granite City, Illinois 62040

RE:   Board of Education Decision on Discipline for D___ M___ **(8th Grade)**

Dear Parents(s):

This letter is to inform you that the Board of Education, at an official meeting held on April 26, 2022, upheld the administration's recommendation to expel D___ M___ in abeyance, due to her participation in a group fight. This one-year expulsion in abeyance will be from the date of the Board of Education meeting, April 26, 2022 thru April 26, 2023. Alternative education services are being discussed at this time. Please know we will follow up with an additional letter when that information is finalized.

If you have further questions regarding the action taken by the Board of Education, please contact me at 451-5800, ext. 2007, or at the Board of Education Administrative Offices, 3200 Maryville Road, Granite City, IL 62040.

Sincerely,

David Keel

cc:   Board of Education

Ms. Stephanie M. Cann, Ed.S., Superintendent
Mr. Pat Curry, Principal
Mr. Tom Schooley, School District Attorney



MS. STEPHANIE M. CANN, ED.S. | SUPERINTENDENT OF SCHOOLS

July 25, 2022

Casondra and Henry Matthews
2903 E 23rd Street
Granite City, IL 62040

RE:    Follow Up Information Regarding Expulsion of D   M

Dear Parents(s):

This letter is to inform you that your daughter will have the opportunity to be educated at the Lake Educational Support Services Center for the 2022-2023 school year. This is an alternative school in Granite City and bussing will be provided. While attending this program, your student will receive in person instruction and have the opportunity to earn credits and stay on pace to graduate. You will be contacted within the next week to set up an intake appointment. At this appointment, you will meet with the building principal and he will discuss the program and answer any questions you may have.

If your daughter participates in the alternative education option, you will need to complete the annual registration procedures (completing annual health information forms, updating emergency contacts, and proving residency) with our District at the beginning of this school year (August 2023). Additionally, upon completion of the expulsion, you may re-enroll your daughter in our district as long as you maintain residency in the District. The annual registration procedures and the re-enrollment will take place at 3200 Maryville Road, Granite City, IL 62040. Per GCSD9 Policy 7:190, a re-engagement plan will be developed upon your daughter's returning to school. The goal of re-engagement shall be to support the student's ability to be successful in school following a period of exclusionary discipline.

**Failure to follow classroom and school rules listed in the Granite City High School Handbook and/or Lake Educational Support Services Handbook, will result in expulsion without services.**

Please be aware that under this one-year expulsion your daughter is not allowed to come to any of the school district's campuses without the express and advance permission of the Principal. This includes after school hours and extra-curricular events.

Sincerely,

David Keel
Executive Director of Educational Operations



PLAINTIFF'S
EXHIBIT
1

To:        Granite City Community School Dist. 9 Board of Education

From:     Dottie Falter, Hearing Officer

RE:       Expulsion Hearing April 7, 2022


Attending for District 9:       Dr. David Keel, Executive Director of Ed. Operations and AEP

                             Stephanie Cann, Superintendent

                             Mr. Tom Schooley, District Attorney

                             Mr. Pat Curry, Coolidge Jr. High Principal


Attending for the Student:     Casondra Matthews - Mother

                             D   M     8th grade


The hearing began at approximately 1:06 p.m. Dr. Keel informed attendees that the hearing would be recorded. Introductions were completed. Mr. Schooley explained the hearing process and the role of the hearing officer. He also explained the recommendation would be made to the Board of Education and that they would make the final decision regarding expulsion according to school code. The administration is recommending one year expulsion with services if available. The final decision on expulsion would be made by the Board of Education at the next scheduled meeting on April 26, 2022 at the board office. Parent and student can attend and address the Board for 3 – 5 minutes if desired. If the student and parent cannot attend, Dr. Keel will inform them of the Board's decision the following day. Mother and student were invited to ask questions at any time during the hearing as the hearings are informal.

Dr. Keel shared copies of documentation. He then discussed the copy of D___s ten day out of school suspension letter informing the parent of D___ being involved in a group fight; would not follow staff directions and would not stop fighting resulting in out of school suspension. **Policy 7:200** was shared and discussed. Dr. Keel explained that procedures were followed for suspension per Granite City School District policy. D___s letter for expulsion was presented. It explains the recommendation for one year expulsion with services if available due to her involvement in a group fight and refusal to follow staff directions and stop fighting. A letter advising of the expulsion hearing was also shared. Dr. Keel shared **Policy 7:210** which discusses the expulsion procedures and shows the administration followed the policy of the district. D___'s attendance report was also discussed. The first semester report card shows 6 excused absences, 10 unexcused and 64 tardies. Mother disagreed with attendance stating she calls each time D___ is absent. D___'s grade report indicated grades for the first semester were; C – science, F – stem, A – Spanish, C – math, R (credit) band, C – social studies, B – Band, A – PE/Band, and A – language arts. Third quarter grades are; A – band, A – PE/band, B – healthy life, C – science – B – social studies, and C – language arts. D___'s discipline report was shared. This report included discipline for the 3/28/22 fight. Other discipline noted was mainly for tardies.

The Coolidge Junior High School Handbook regarding student behavior was referenced on **pg. 32, #9 and #21** – both of which are copies of the **Policy 7:190** that are included in the student handbook.

**Policy 7:190** was shared by Dr. Keel. This policy discusses prohibited student behavior. He referenced and read **pg. 2 #9** – "Engaging in hazing or any kind of bullying or aggressive behavior that does physical or psychological harm to a staff person or another student, or urging other students to engage in such conduct. Prohibited conduct specifically includes, without limitation, any use of violence, intimidation, force, noise, coercion, threats, stalking, harassment, sexual harassment, public humiliation, theft or destruction of property, retaliation, hazing bullying, bullying using a school computer network, or other comparable conduct". Also read was **pg. 3 #21** – "engaging in any activity, on or off campus, that interferes with, disrupts, or adversely affects the school environment, school operations, or an education function, including but not limited to, conduct that may (b) endanger the health or safety of students, staff, or school property".

Dr. Keel asked D⬛ to identify and read a written statement she had given to Mr. Curry. She agreed it was her statement and read; " M⬛ was the one that started all of this. She was talking stuff on the internet won't say nothing to nobody face. Then she want to run up on my friend so I jumped in then her other friend jumped in and started to go after me".

Dr. Keel shared a video of the fight 3/28/22. D⬛ is idented on the left in the hallway with A⬛ The video shows A⬛ getting into a fight and D⬛ jumping in. The incident took place passing period 6th period. Mr. Curry shares D⬛ s schedule to confirm she was to be in the same hallway for her next class. No reason to be at the intersection. D⬛ explains she came down to meet A⬛ Video shows fighting, D⬛ jumps in with 2 girls then out and next engages with 2 other girls on the other side of the hall. A teacher tries to break it up. The fight moves to a side hallway where the girls are shown continuing to punch and fight. Another teacher arrives and breaks it up. They are shown coming from behind the stairwell with the teacher. Another video was viewed showing the two girls fighting in the side hall. Both are pulling hair, punching. D⬛ confirms she was fighting with E⬛.

Mr. Curry shared information he had gathered as a result of his investigation of the incident. "It is my understanding in talking with students, your friend A⬛ made comments about one of the other girl's cousins who died in the amusement park. Some stuff went on on social media, comments, that A⬛ and M⬛ her friends wanted to fight. You said yourself you jumped in because it was your friend. You met up and stood at the "t". Those 3 girls are coming and you're waiting. It was also discussed this was to transpire outside of school but a couple couldn't make it so it was decided to do it in the hallway. Is that accurate?" "Yes". Mother questioned if the whole story was accurate? D⬛ responds, "Yes, except for the dude from Florida. I don't think she was talking about him". "You didn't know there was going to be a fight that day? No. What were you thinking? You were the first to jump in. First I tried helping and then I tried pulling her off. Then I started punching. That's the context I understand Mr. Curry stated. "Some have said the fight was supposed to happen on Sunday and that led to it coming to school. Is that accurate? No. You didn't know there was going to be a fight? No. Did you know A⬛ sent text messages that she wanted to fight her? Yes." Anything else you would like to share? No.

Mr. Schooley asks D⬛ "there is a short period where you and the girl disengage. Then you end up fighting down the hall. Tell us what happened." D⬛ replies, "E⬛ came at me and started throwing

punches at me.  Do you remember the teacher telling you to stop? No, I don't remember that at all. What would you do differently?   Not throw punches at nobody".

**Policy 7:215** was examined.  Dr. Keel explained, "if a student is suspended or expelled for any reason from any public or private school in this or any other state, the student must complete the entire term of suspension or expulsion before being admitted into the school district".  Dr. Keel explained if expelled, you must serve the entire year of expulsion and are not allowed on any school campus or at any school functions during the time of expulsion.  If they do not attend the Board meeting on April 26, 2022, Dr. Keel will call to notify them of the Board's final decision.

The hearing concluded at 2:41 p.m.


It is the recommendation of the hearing officer that the recommendation to expel D    M    (8th grade) for one calendar year with services if available be upheld at the Board of Education meeting that will be held on April 26, 2022.



PLAINTIFF'S EXHIBIT
E

## Students

This policy becomes effective and replaces the current policy on *Expulsion Procedures* on the first student attendance day of the 2016-2017 school year.

### Expulsion Procedures

The Superintendent or designee shall implement expulsion procedures that provide, at a minimum, for the following:

1. Before a student may be expelled, the student and his or her parent(s)/guardian(s) shall be provided a written request to appear at a hearing to determine whether the student should be expelled. The request shall be sent by registered or certified mail, return receipt requested. The request shall:

    a. Include the time, date, and place for the hearing.

    b. Briefly describe what will happen during the hearing.

    c. Detail the specific act of gross disobedience or misconduct resulting in the decision to recommend expulsion.

    d. List the student's prior suspension(s).

    e. State that the School Code allows the School Board to expel a student for a definite period of time not to exceed 2 calendar years, as determined on a case-by-case basis.

    f. Ask that the student or parent(s)/guardian(s) or attorney inform the Superintendent or Board Attorney if the student will be represented by an attorney and, if so, the attorney's name and contact information.

2. Unless the student and parent(s)/guardian(s) indicate that they do not want a hearing or fail to appear at the designated time and place, the hearing will proceed. It shall be conducted by the Board or a hearing officer appointed by it. If a hearing officer is appointed, he or she shall report to the Board the evidence presented at the hearing and the Board shall take such final action as it finds appropriate. Whenever there is evidence that mental illness may be the cause for the recommended expulsion, the Superintendent or designee shall invite a representative from the Dept. of Human Services to consult with the Board.

3. During the expulsion hearing, the Board or hearing officer shall hear evidence concerning whether the student is guilty of the gross disobedience or misconduct as charged. School officials must provide: (1) testimony of any other interventions attempted and exhausted or of their determination that no other appropriate and available interventions were available for the student, and (2) evidence of the threat or disruption posed by the student. The student and his or her parent(s)/guardian(s) may be represented by counsel, offer evidence, present witnesses, cross-examine witnesses who testified, and otherwise present reasons why the student should not be expelled. After presentation of the evidence or receipt of the hearing officer's report, the Board shall decide the issue of guilt and take such action as it finds appropriate.

4. If the Board acts to expel the student, its written expulsion decision shall:

    a. Detail the specific reason why removing the student from his or her learning environment is in the best interest of the school.

    b. Provide a rationale for the specific duration of the recommended expulsion.

    c. Document how school officials determined that all behavioral and disciplinary interventions have been exhausted by specifying which interventions were attempted or whether school officials determined that no other appropriate and available interventions existed for the student.

  d. Document how the student's continuing presence in school would (1) pose a threat to the safety of other students, staff, or members of the school community, or (2) substantially disrupt, impede, or interfere with the operation of the school.

5. Upon expulsion, the District may refer the student to appropriate and available support services.

LEGAL REF.:  105 ILCS 5/10-22.6(a).
      <u>Goss v. Lopez</u>, 95 S.Ct. 729 (1975).

CROSS REF.:  5:100 (Staff Development); 7:130 (Student Rights and Responsibilities), 7:190 (Student Behavior), 7:200 (Suspension Procedures), 7:230 (Misconduct by Students with Disabilities)

Adopted:  8/10/2004

Revised:  12/8/2008, 11/10/2009, 4/12/2016



# Granite City Community Unit School District #9

## COOLIDGE JUNIOR HIGH SCHOOL



**PLAINTIFF'S EXHIBIT**

F

March 28, 2022

Casondra Matthews
2903 E 23rd St
Granite City, IL 62040

Dear Parent(s) and/or Guardian(s),

This letter is to officially inform you that your daughter, D_____ M_____ 8th Grade, has been suspended from Coolidge Junior High School for (10) days. This suspension will begin on Tuesday, March 29, 2022. Their return to school is scheduled to be Tuesday, April 12, 2022.

**Incident:** D____ was involved in a physical altercation during the end of 5th hour and start of 6th hour passing period. The altercation involved multiple students, where it is clear that D____ threw multiple punches. **Incident Date:** March 28, 2022.

**Handbook Violation:** These actions directly violate the district's policy regarding student behavior. Please reference (Policy 7:190) Student Behavior.

**Interventions:** Building-wide steps for intervention have included school-wide notification presented to the entire school community through the Student Handbook: A Guide for Students and Parents. School-wide positive behavior intervention support programs are in place to promote good choices that all staff utilize to encourage appropriate behavior.

As required by the Illinois School Code, your child has been informed about this suspension and the reasoning for it. Your child has been given the opportunity to respond to the charges stated. During the period of suspension, your child may not be present on any GCSD9 school grounds or participate in any GCSD9 school activities. Failure to comply with this directive constitutes a trespass and will be dealt with accordingly. Your child will be given an opportunity to complete missed assignments or work during the suspension for equivalent academic credit.

According to the Illinois School Code, Chapter 105, Section 5/10-22.6(b), you shall receive this notice of the suspension and have a right to a hearing. If you wish to exercise your right to a review concerning this suspension, you should notify the Executive Director of Operations in writing within ten days and he will arrange a hearing.

If you have any questions regarding this suspension, please contact me. I can be reached at Coolidge Junior High School at 451-5826 between the hours of 7:15 A.M and 3:45 P.M

Please follow through if one of the following is checked. If nothing is checked, no further contact is necessary.

_____ A parent conference is not required before your child returns to school.

_____ A parent conference is recommended before your child returns to school.
Call Coolidge Junior High School at 451-5826 to schedule.

_____ A Re-Engagement Conference is mandatory and must be conducted before your child returns to school.
Call Coolidge Junior High School at 451-5826 to schedule.



# Granite City Community Unit School District #9

## COOLIDGE JUNIOR HIGH SCHOOL

__X__ This incident is under administrative review. Additional correspondence with you will be forthcoming from the Executive Director of Operations or his designee.

_____ Assessment by an approved agency as consideration for early return.
Call the Director of Secondary Education at 451-5800, ext. 2006 for information.

_____ Alternative education placement may be an option.
Call the Executive Director of Operations at 451-5800, ext. 2006 if interested.

Additional guidelines for return will be considered at the conference mentioned above.

Sincerely,

Coolidge Junior High School Administration



# Students

## Student Behavior

The goals and objectives of this policy are to provide effective discipline practices that: (1) ensure the safety and dignity of students and staff; (2) maintain a positive, weapons-free, and drug-free learning environment; (3) keep school property and the property of others secure; (4) address the causes of a student's misbehavior and provide opportunities for all individuals involved in an incident to participate in its resolution; and (5) teach students positive behavioral skills to become independent, self-disciplined citizens in the school community and society.

### *When* and *Where* Conduct Rules Apply

A student is subject to disciplinary action for engaging in prohibited student conduct, as described in the section with that name below, whenever the student's conduct is reasonably related to school or school activities, including, but not limited to:

1. On, or within sight of, school grounds before, during, or after school hours or at any time;
2. Off school grounds at a school-sponsored activity or event, or any activity or event that bears a reasonable relationship to school;
3. Traveling to or from school or a school activity, function, or event; or
4. Anywhere, if the conduct interferes with, disrupts, or adversely affects the school environment, school operations, or an educational function, including, but not limited to, conduct that may reasonably be considered to: (a) be a threat or an attempted intimidation of a staff member; or (b) endanger the health or safety of students, staff, or school property.

### Prohibited Student Conduct

The school administration is authorized to discipline students for gross disobedience or misconduct, including but not limited to:

1. Using, possessing, distributing, purchasing, or selling tobacco or nicotine materials, including without limitation, electronic cigarettes.
2. Using, possessing, distributing, purchasing, or selling alcoholic beverages. Students who are under the influence of an alcoholic beverage are not permitted to attend school or school functions and are treated as though they had alcohol in their possession.
3. Using, possessing, distributing, purchasing, selling, or offering for sale:
   a. Any illegal drug or controlled substance, or cannabis (including marijuana, hashish, and medical cannabis unless the student is authorized to be administered a medical cannabis infused product under *Ashley's Law*).
   b. Any anabolic steroid unless it is being administered in accordance with a physician's or licensed practitioner's prescription.
   c. Any performance-enhancing substance on the Illinois High School Association's most current banned substance list unless administered in accordance with a physician's or licensed practitioner's prescription.
   d. Any prescription drug when not prescribed for the student by a physician or licensed practitioner, or when used in a manner inconsistent with the prescription or prescribing physician's or licensed practitioner's instructions. The use or possession of medical cannabis, even by a student for whom medical cannabis has been prescribed, is prohibited unless the

student is authorized to be administered a medical cannabis infused product under *Ashley's Law.*

   e. Any inhalant, regardless of whether it contains an illegal drug or controlled substance: (a) that a student believes is, or represents to be capable of, causing intoxication, hallucination, excitement, or dulling of the brain or nervous system; or (b) about which the student engaged in behavior that would lead a reasonable person to believe that the student intended the inhalant to cause intoxication, hallucination, excitement, or dulling of the brain or nervous system. The prohibition in this section does not apply to a student's use of asthma or other legally prescribed inhalant medications.

   f. Any substance inhaled, injected, smoked, consumed, or otherwise ingested or absorbed with the intention of causing a physiological or psychological change in the body, including without limitation, pure caffeine in tablet or powdered form.

   g. *Look-alike* or counterfeit drugs, including a substance that is not prohibited by this policy, but one: (a) that a student believes to be, or represents to be, an illegal drug, controlled substance, or other substance that is prohibited by this policy; or (b) about which a student engaged in behavior that would lead a reasonable person to believe that the student expressly or impliedly represented to be an illegal drug, controlled substance, or other substance that is prohibited by this policy.

   h. Drug paraphernalia, including devices that are or can be used to: (a) ingest, inhale, or inject cannabis or controlled substances into the body; and (b) grow, process, store, or conceal cannabis or controlled substances.

   i. Students who are under the influence of any prohibited substance are not permitted to attend school or school functions and are treated as though they had the prohibited substance, as applicable, in their possession.

4. Using, possessing, controlling, or transferring a *weapon* as that term is defined in the **Weapons** section of this policy, or violating the **Weapons** section of this policy.

5. Using or possessing an electronic paging device. Using a cellular telephone, video recording device, personal digital assistant (PDA), or other electronic device in any manner that disrupts the educational environment or violates the rights of others, including using the device to take photographs in locker rooms or bathrooms, cheat, or otherwise violate student conduct rules. Prohibited conduct specifically includes, without limitation, creating, sending, sharing, viewing, receiving, or possessing an indecent visual depiction of oneself or another person through the use of a computer, electronic communication device, or cellular phone. Unless otherwise banned under this policy or by the Building Principal, all electronic devices must be kept powered-off and out-of-sight during the regular school day unless: (a) the supervising teacher grants permission; (b) use of the device is provided in a student's individualized education program (IEP); (c) it is used during the student's lunch period, or (d) it is needed in an emergency that threatens the safety of students, staff, or other individuals.

6. Using or possessing a laser pointer unless under a staff member's direct supervision and in the context of instruction.

7. Disobeying rules of student conduct or directives from staff members or school officials. Examples of disobeying staff directives include refusing a District staff member's request to stop, present school identification, or submit to a search.

8. Engaging in academic dishonesty, including cheating, intentionally plagiarizing, wrongfully giving or receiving help during an academic examination, altering report cards, and wrongfully obtaining test copies or scores.

9. Engaging in hazing or any kind of bullying or aggressive behavior that does physical or psychological harm to a staff person or another student, or urging other students to engage in such

conduct. Prohibited conduct specifically includes, without limitation, any use of violence, intimidation, force, noise, coercion, threats, stalking, harassment, sexual harassment, public humiliation, theft or destruction of property, retaliation, hazing, bullying, bullying using a school computer or a school computer network, or other comparable conduct.

10. Engaging in any sexual activity, including without limitation, offensive touching, sexual harassment, indecent exposure (including mooning), and sexual assault. This does not include the non-disruptive: (a) expression of gender or sexual orientation or preference, or (b) display of affection during non-instructional time.

11. Teen dating violence, as described in Board policy 7:185, *Teen Dating Violence Prohibited.*

12. Causing or attempting to cause damage to, or stealing or attempting to steal, school property or another person's personal property.

13. Entering school property or a school facility without proper authorization.

14. In the absence of a reasonable belief that an emergency exists, calling emergency responders (such as calling 911); signaling or setting off alarms or signals indicating the presence of an emergency; or indicating the presence of a bomb or explosive device on school grounds, school bus, or at any school activity.

15. Being absent without a recognized excuse; State law and School Board policy regarding truancy control will be used with chronic and habitual truants.

16. Being involved with any public school fraternity, sorority, or secret society, by: (a) being a member; (b) promising to join; (c) pledging to become a member; or (d) soliciting any other person to join, promise to join, or be pledged to become a member.

17. Being involved in gangs or gang-related activities, including displaying gang symbols or paraphernalia.

18. Violating any criminal law, including but not limited to, assault, battery, arson, theft, gambling, eavesdropping, vandalism, and hazing.

19. Making an explicit threat on an Internet website against a school employee, a student, or any school-related personnel if the Internet website through which the threat was made is a site that was accessible within the school at the time the threat was made or was available to third parties who worked or studied within the school grounds at the time the threat was made, and the threat could be reasonably interpreted as threatening to the safety and security of the threatened individual because of his or her duties or employment status or status as a student inside the school.

20. Operating an unmanned aircraft system (UAS) or drone for any purpose on school grounds or at any school event unless granted permission by the Superintendent or designee.

21. Engaging in any activity, on or off campus, that interferes with, disrupts, or adversely affects the school environment, school operations, or an educational function, including but not limited to, conduct that may reasonably be considered to: (a) be a threat or an attempted intimidation of a staff member; or (b) endanger the health or safety of students, staff, or school property.

For purposes of this policy, the term *possession* includes having control, custody, or care, currently or in the past, of an object or substance, including situations in which the item is: (a) on the student's person; (b) contained in another item belonging to, or under the control of, the student, such as in the student's clothing, backpack, or automobile; (c) in a school's student locker, desk, or other school property; or (d) at any location on school property or at a school-sponsored event.

Efforts, including the use of positive interventions and supports, shall be made to deter students, while at school or a school-related event, from engaging in aggressive behavior that may reasonably produce physical or psychological harm to someone else. The Superintendent or designee shall ensure that the parent/guardian of a student who engages in aggressive behavior is notified of the incident. The failure to

provide such notification does not limit the Board's authority to impose discipline, including suspension or expulsion, for such behavior.

No disciplinary action shall be taken against any student that is based totally or in part on the refusal of the student's parent/guardian to administer or consent to the administration of psychotropic or psychostimulant medication to the student.

<u>Disciplinary Measures</u>

School officials shall limit the number and duration of expulsions and out-of-school suspensions to the greatest extent practicable, and, where practicable and reasonable, shall consider forms of non-exclusionary discipline before using out-of-school suspensions or expulsions. School personnel shall not advise or encourage students to drop out voluntarily due to behavioral or academic difficulties. Potential disciplinary measures include, without limitation, any of the following:

1. Notifying parent(s)/guardian(s).
2. Disciplinary conference.
3. Withholding of privileges.
4. Temporary removal from the classroom.
5. Return of property or restitution for lost, stolen, or damaged property.
6. In-school suspension. The Building Principal or designee shall ensure that the student is properly supervised.
7. After-school study or Saturday study provided the student's parent/guardian has been notified. If transportation arrangements cannot be agreed upon, an alternative disciplinary measure must be used. The student must be supervised by the detaining teacher or the Building Principal or designee.
8. Community service with local public and nonprofit agencies that enhances community efforts to meet human, educational, environmental, or public safety needs. The District will not provide transportation. School administration shall use this option only as an alternative to another disciplinary measure, giving the student and/or parent/guardian the choice.
9. Seizure of contraband; confiscation and temporary retention of personal property that was used to violate this policy or school disciplinary rules.
10. Suspension of bus riding privileges in accordance with Board policy 7:220, *Bus Conduct*.
11. Out-of-school suspension from school and all school activities in accordance with Board policy 7:200, *Suspension Procedures*. A student who has been suspended may also be restricted from being on school grounds and at school activities.
12. Expulsion from school and all school activities for a definite time period not to exceed 2 calendar years in accordance with Board policy 7:210, *Expulsion Procedures*. A student who has been expelled may also be restricted from being on school grounds and at school activities.
13. Transfer to an alternative program if the student is expelled or otherwise qualifies for the transfer under State law. The transfer shall be in the manner provided in Article 13A or 13B of the School Code.
14. Notifying juvenile authorities or other law enforcement whenever the conduct involves criminal activity, including but not limited to, illegal drugs (controlled substances), *look-alikes*, alcohol, or weapons or in other circumstances as authorized by the reciprocal reporting agreement between the District and local law enforcement agencies.

The above list of disciplinary measures is a range of options that will not always be applicable in every case. In some circumstances, it may not be possible to avoid suspending or expelling a student because behavioral interventions, other than a suspension and expulsion, will not be appropriate and available, and the only reasonable and practical way to resolve the threat and/or address the disruption is a suspension or expulsion.

Corporal punishment is prohibited. *Corporal punishment* is defined as slapping, paddling, or prolonged maintenance of students in physically painful positions, or intentional infliction of bodily harm. Corporal punishment does not include reasonable force as needed to maintain safety for students, staff, or other persons, or for the purpose of self-defense or defense of property.

Isolated Time Out, Time Out, and Physical Restraint

Neither isolated time out, time out, nor physical restraint shall be used to discipline or punish a student. These methods are only authorized for use as permitted in 105 ILCS 5/10-20.33, State Board of Education rules (23 Ill.Admin.Code §§ 1.280, 1.285), and the District's procedure(s).

Weapons

A student who is determined to have brought one of the following objects to school, any school-sponsored activity or event, or any activity or event that bears a reasonable relationship to school shall be expelled for a period of at least one calendar year but not more than two calendar years:

1. A *firearm*, meaning any gun, rifle, shotgun, or weapon as defined by Section 921 of Title 18 of the United States Code (18 U.S.C. § 921), firearm as defined in Section 1.1 of the Firearm Owners Identification Card Act (430 ILCS 65/), or firearm as defined in Section 24-1 of the Criminal Code of 1961 (720 ILCS 5/24-1).

2. A knife, brass knuckles, or other knuckle weapon regardless of its composition, a billy club, or any other object if used or attempted to be used to cause bodily harm, including *look-alikes* of any *firearm* as defined above.

The expulsion requirement under either paragraph one or two above may be modified by the Superintendent, and the Superintendent's determination may be modified by the Board on a case-by-case basis. The Superintendent or designee may grant an exception to this policy, upon the prior request of an adult supervisor, for students in theatre, cooking, ROTC, martial arts, and similar programs, whether or not school-sponsored, provided the item is not equipped, nor intended, to do bodily harm.

This policy's prohibitions concerning weapons apply regardless of whether: (1) a student is licensed to carry a concealed firearm, or (2) the Board permits visitors, who are licensed to carry a concealed firearm, to store a firearm in a locked vehicle in a school parking area.

Re-Engagement of Returning Students

The Superintendent or designee shall maintain a process to facilitate the re-engagement of students who are returning from an out-of-school suspension, expulsion, or an alternative school setting. The goal of re-engagement shall be to support the student's ability to be successful in school following a period of exclusionary discipline and shall include the opportunity for students who have been suspended to complete or make up work for equivalent academic credit.

Required Notices

A school staff member shall immediately notify the office of the Building Principal in the event that he or she: (1) observes any person in possession of a firearm on or around school grounds; however, such action may be delayed if immediate notice would endanger students under his or her supervision, (2) observes or has reason to suspect that any person on school grounds is or was involved in a drug-related incident, or (3) observes a battery committed against any staff member. Upon receiving such a report, the Building Principal or designee shall immediately notify the local law enforcement agency, Ill. Dept. of State Police (ISP), and any involved student's parent/guardian. *School grounds* includes modes of transportation to school activities and any public way within 1000 feet of the school, as well as school property itself.

Delegation of Authority

Each teacher, and any other school personnel when students are under his or her charge, is authorized to impose any disciplinary measure, other than suspension, expulsion, corporal punishment, or in-school suspension, that is appropriate and in accordance with the policies and rules on student discipline. Teachers,

other certificated [licensed] educational employees, and other persons providing a related service for or with respect to a student, may use reasonable force as needed to maintain safety for other students, school personnel, or other persons, or for the purpose of self-defense or defense of property. Teachers may temporarily remove students from a classroom for disruptive behavior.

The Superintendent, Building Principal, Assistant Building Principal, or Dean of Students is authorized to impose the same disciplinary measures as teachers and may suspend students guilty of gross disobedience or misconduct from school (including all school functions) and from riding the school bus, up to ten consecutive school days, provided the appropriate procedures are followed. The Board may suspend a student from riding the bus in excess of ten school days for safety reasons.

Student Handbook

The Superintendent, with input from the parent-teacher advisory committee, shall prepare disciplinary rules implementing the District's disciplinary policies. These disciplinary rules shall be presented annually to the Board for its review and approval.

A student handbook, including the District disciplinary policies and rules, shall be distributed to the students' parents/guardians within 15 days of the beginning of the school year or a student's enrollment.

| | |
|---|---|
| Incorporated by Reference: | 7:190-AP4 (Use of Isolated Time Out, Time Out, and Physical Restraint) |
| LEGAL REF.: | 20 U.S.C. §6081, Pro-Children Act of 1994. |
| | 20 U.S.C. §7961 et seq., Gun Free Schools Act. |
| | 105 ILCS 5/10-20.5b, 5/10-20.14, 5/10-20.28, 5/10-20.36, 5/10-21.7, 5/10-21.10, 5/10-22.6, 5/10-27.1A, 5/10-27.1B, 5/22-33, 5/24-24, 5/26-12, 5/27-23.7, 5/31-3, and 110/3.10. |
| | 410 ILCS 130/, Compassionate Use of Medical Cannabis Pilot Program. |
| | 410 ILCS 647/, Powdered Caffeine Control and Education Act. |
| | 430 ILCS 66/, Firearm Concealed Carry Act. |
| | 23 Ill.Admin.Code §§ 1.280, 1.285. |
| CROSS REF.: | 2:150 (Committees), 2:240 (Board Policy Development), 5:230 (Maintaining Student Discipline), 6:110 (Programs for Students At Risk of Academic Failure and/or Dropping Out of School and Graduation Incentives Program), 7:70 (Attendance and Truancy), 7:130 (Student Rights and Responsibilities), 7:140 (Search and Seizure), 7:150 (Agency and Police Interviews), 7:160 (Student Appearance), 7:170 (Vandalism), 7:180 (Prevention of and Response to Bullying, Intimidation, and Harassment), 7:185 (Teen Dating Violence Prohibited), 7:200 (Suspension Procedures), 7:210 (Expulsion Procedures), 7:220 (Bus Conduct), 7:230 (Misconduct by Students with Disabilities), 7:240 (Conduct Code for Participants in Extracurricular Activities), 7:270 (Administering Medicines to Students), 7:310 (Restrictions on Publications; Elementary Schools), 8:30 (Visitors to and Conduct on School Property) |
| Adopted: | 08/10/2004 |
| Revised: | 09/22/2015, 10/11/2016, 08/11/2020 |

```
lstdsc22.p 77-4                    Granite City School District        04/04/22         Page:1
05.21.10.00.00                     STUDENT DISCIPLINE REPORT                             8:56 AM
```

| | Off/Act Type | Per | Sch | Location | P N | Points | Day/ Hrs | Time | Served | Diff | Reason | Incident/ Status |
|---|---|---|---|---|---|---|---|---|---|---|---|---|

M_____ , D____         M___ D___   Sch: 015  Gr: 08 - 2026  Type: R   Race:02  Adv: ADRIENNE JOHNSON            HM: GYMC

2022 Entity: 015

Offense 03/28/2022        FIG Fighting            015 HALLWAY      Y   0.00                                    197354
   Disc Officer:  PAT CURRY                       Bus:            Referred By : PAT CURRY        Date Entered: 03/29/22
      Involved in a physical altercation during the 5H/6H passing period.  The altercation involved
      multiple students where it was clear D____ threw multiple punches.
   Action                 OSO Out of Schl 10      015             Y   0.00  Day  10.00   .00                    Open
   Follow-Up By: PAT CURRY                        Susp Out of Schoo
      OSS issued 3/29-4/11 pending admin review.  Suspension letter mailed.  Spoke with mom at the
      building 3/28.
      Detail 03/29/2022  3:21P                        OFFICE      N                      .00                    Open
   Follow-Up By:
      Detail 03/30/2022  3:21P                        OFFICE      N                      .00                    Open
   Follow-Up By:
      Detail 03/31/2022  3:21P                        OFFICE      N                      .00                    Open
   Follow-Up By:
      Detail 04/01/2022  3:21P                        OFFICE      N                      .00                    Open
   Follow-Up By:
      Detail 04/04/2022  3:21P                        OFFICE      N                      .00                    Open
   Follow-Up By:
      Detail 04/05/2022  3:21P                        OFFICE      N                      .00                    Open
   Follow-Up By:
      Detail 04/06/2022  3:21P                        OFFICE      N                      .00                    Open
   Follow-Up By:
      Detail 04/07/2022  3:21P                        OFFICE      N                      .00                    Open
   Follow-Up By:
      Detail 04/08/2022  3:21P                        OFFICE      N                      .00                    Open
   Follow-Up By:
      Detail 04/11/2022  3:21P                        OFFICE      N                      .00                    Open
   Follow-Up By:


Offense 02/23/2022        TAR Tardies            015 HALLWAY      N   0.00                                     195748
   Disc Officer:  LORI SILVA                      Bus:            Referred By : LORI SILVA       Date Entered: 02/23/22
      15 Tardies to classes this quarter
   Action                 HIS Hf. Day ISS         015             N   0.00  Hrs   4.00   .00                    Open
   Follow-Up By:  LORI SILVA                      Susp None
      4 hours in ISS is issued for 2/24
      Detail 02/24/2022                                           N                      .00                    Open
   Follow-Up By:
      Detail 02/25/2022                                           N                      .00                    Open
   Follow-Up By:
      Detail 02/28/2022                                           N                      .00                    Open
   Follow-Up By:
      Detail 03/01/2022                                           N                      .00                    Open
   Follow-Up By:


Offense 02/14/2022        TAR Tardies            015 HALLWAY      N   0.00                                     195176
   Disc Officer:  LORI SILVA                      Bus:            Referred By : LORI SILVA       Date Entered: 02/14/22
      10 tardies to classes this quarter
   Action                 HRS Hr. Susp.           015             N   0.00  Hrs   1.00   .00                    Open
   Follow-Up By:  LORI SILVA                      Susp None
      One hour lunch detention issued for 2/15
```

PLAINTIFF'S EXHIBIT

K

tabbies®

```
1stdsc22.p 77-4                         Granite City School District              04/04/22          Page:2
05.21.10.00.00                          STUDENT DISCIPLINE REPORT                                    8:56 AM
```

|                    | Off/Act Type | Per | Sch | Location  | P N | Points | Day/ Hrs | Time | Served | Diff Reason | Incident/ Status |
|--------------------|--------------|-----|-----|-----------|-----|--------|----------|------|--------|-------------|------------------|

```
M▓▓▓▓ D▓▓▓              M▓▓▓▓D▓▓▓▓  Sch: 015  Gr: 08 - 2026 Type: R   Race:02  Adv: ADRIENNE JOHNSON              HM: GYMC
   Action                  HRS Hr. Susp.              015                 N    0.00  Hrs   1.00   .00                      Open
   Detail 02/15/2022                                                      N                       .00                      Open
   Follow-Up By:

Offense 02/11/2022 12:37P   SKP Skipping       015  CLASSROOM    N   0.00                                           195109
   Disc Officer:  PAT CURRY                   Bus:           Referred By : GAYLA BENNETT               Date Entered: 02/11/22
      D▓▓▓▓ came to class at 12:35 (20 minutes after class started) with no pass.  When asked why she
      was late, she said she was helping another student to class who is on crutches.  However, she only
      had sketchy details as to why it made her 20 minutes to class.  She said the student was going from
      Janek to Utley.
   Action                  SIL Silent Lunch          015                 N    0.00  Hrs   .00    .00                      Open
   Follow-Up By:  PAT CURRY            Susp None
      5H Silent Lunch.

Offense 11/10/2021          TAR Tardies         015  HALLWAY      N   0.00                                           191549
   Disc Officer:  LORI SILVA                   Bus:           Referred By : LORI SILVA                 Date Entered: 11/10/21
      10 tardies to classes
   Action                  DSD During Sch. Det       015                 N    0.00  Hrs   1.00   .00                      Open
   Follow-Up By:  LORI SILVA           Susp None
      10 tardies = one hour lunch detention
   Detail 11/15/2021                                                      N                       .00                      Open
   Follow-Up By:

Offense 10/07/2021 12:23P   SKP Skipping       015  CLASSROOM    N   0.00                                           189598
   Disc Officer:  PAT CURRY                   Bus:           Referred By : CHARLES NOUD                Date Entered: 10/07/21
      She has not arrived to class yet and is not signed out.
   Action                  SIL Silent Lunch          015                 N    0.00  Hrs   .00    .00                      Open
   Follow-Up By:  PAT CURRY            Susp None
      4-2 Silent Lunch 10/12.
```

```
*********************** End of report ***********************
```